## Holt *versus* Martin, Agent.

1. Martin being the owner of one undivided seventh part of a house, leased the whole premises in his own name as "*agent*." He subsequently conveyed his interest to Harper, and, after failure of the tenant to go out on the determination of his lease, brought ejectment in his own name. *Held*, that evidence on the part of the tenant of the conveyance was inadmissible without also showing attornment to Harper or other act by Harper to sever the possession.

2. Nor was evidence admissible to show that the owners of the other interests in the premises had revoked Martin's agency, as being in conflict with the rule which will not permit the tenant to dispute his landlord's title.

CERTIFICATE from *Nisi Prius*.

This was an action of ejectment by Andrew M. Martin, agent, against Seth W. Holt, to recover possession of an office and cellar, part of premises at the corner of Third and Chestnut streets, Philadelphia.

There were similar actions for parts of the same premises by the same plaintiff against Jacob E. Ridgway, A. J. Husted and J. M. Auter, which, at the suggestion of the judge at Nisi Prius (Woodward, C. J.), were all tried together; and, the same principles being involved in each of them, by agreement of counsel the decision of the Supreme Court in the first case was to be entered in all the others.

The premises at the north-east corner of Third and Chestnut streets were owned by Robert C. Martin. He died in 1854, leaving a widow, Sarah Ann, and seven children, one of whom has since died. He devised these premises to his children equally; the widow elected to take under the intestate laws. Andrew, the plaintiff, was one of the children. On the 4th of November, "Andrew M. Martin, Agent," by written lease rented to Holt the office, &c., above mentioned for one month and thereafter from month to month, until one party should give a month's notice to the other of a desire to determine the tenancy; with right of entry to distrain for the rent, if remaining unpaid. After numerous stipulations, was the following:—

"And if the lessee shall in any particular violate any one of his said promises, or fail to comply with any of the conditions of this lease, on notice given under the terms hereof, then the lessor may cause a notice to be left on the premises of his intention to determine this lease, and at the expiration of ten days from the time of so leaving such notice, this lease shall absolutely determine; and any attorney may immediately thereafter, as attorney for the lessee, sign an agreement for entering, in any competent court, an amicable action and judgment in ejectment (without any stay of execution) against the lessee and all persons claiming under him, for the recovery by the lessor of possession of the hereby demised premises, for which this shall be a

sufficient warrant ; and thereupon a writ of *habere facias posses-sionem* may issue forthwith without any prior writ or proceedings whatsoever, and the lessee hereby releases to the lessor all errors and defects whatsoever in entering such action or judgment, or causing such writ of *habere facias possessionem* to be issued, or in any proceeding thereon or concerning the same ; and hereby agrees that no writ of error, or objection or exception, shall be made or taken thereto."

On the 30th of January, Martin gave notice to Holt that he desired to determine the tenancy, and requested him to deliver the premises on the 4th March then next. Holt not having delivered the premises, Martin, March 8th, gave him this notice :—

" SIR :—You having failed to comply with the notice given February 2d 1865, under the term of your lease, to leave and peaceably deliver up the office and cellar No. 243 Chestnut street, part of a messuage or tenement with the appurtenances, situate at the north-east corner of Third and Chestnut streets, you are hereby notified that it is my intention to determine said lease, and that at the expiration of ten days from the date of this notice said lease will absolutely determine.      " A. M. MARTIN, Agent.

" March, 8th 1865."

On the 22d of March, under the authority in the lease, Martin procured an attorney to enter an amicable action of ejectment and confession of judgment in the Supreme Court, and issued an *habere facias.* Upon the application of Holt, the judgment was opened and he let into a defence.

On the trial of the case the plaintiff gave in evidence the lease, the notices and the record of the amicable action, and closed. The defendant then offered the following evidence :—

1. Deed from Andrew M. Martin to Edward B. Harper, dated January 23d 1865, conveying in fee his interest in the premises in question, and reciting title as derived under the will of Robert C. Martin, deceased, and also the names and interest of the other heirs and the widow.

2. The will of Robert C. Martin referred to in the above deed, dated November 15th 1853, and proved January 16th 1854.

3. The several accounts rendered by plaintiff to the widow and children of the said Robert C. Martin, as their agent, of the rents collected by him from the defendant down to January 31st 1865.

4. Payment of rent by defendant to the widow and some of the heirs for time commencing prior to the commencement of these proceedings, and continuing to the (then) present time for the premises in question.

5. Revocation of plaintiff's agency, on or about February 2d

[Holt v. Martin.]

1865, by the widow and heirs representing eleven twenty-first parts or interests in the property in question.

6. That the widow and heirs were opposed to the proceedings of the plaintiff, and desired the defendant to remain in possession ; for the purpose of showing that the plaintiff's right, title and interest had ended by transfer and revocation before the commencement of this ejectment ; also that plaintiff, in executing the lease in question, acted as agent of the estate of Robert C. Martin, and they, plaintiff's principals, revoked his agency before these proceedings were commenced ; and that defendant had received notice prior to the commencement of these proceedings in ejectment of the revocation of plaintiff's agency and right to collect the rent, and of the appointment of another agent in plaintiff's place.

Which on objection by the plaintiff was rejected, and the defendant having closed his case, the court directed the jury to find for the plaintiff.

The errors assigned were the rejection of the evidence offered, and directing a verdict for the plaintiff.

*B. Woodward, R. P. White* and *G. M. Wharton*, for plaintiff in error.—No authority was shown for commencing the proceedings as they were commenced. The proceedings in ejectment provided for in the lease, are only authorized after ten days' notice, and could apply only to those breaches which did not determine the lease. The first notice terminated the lease at the 4th of March, and the lessor could then obtain possession only by an adversary ejectment or by the statutory remedy.

The evidence offered would have established a complete defence. A plaintiff in ejectment must recover on the strength of his own title : Welker v. Coulter, Add. 390 ; Lane v. Reynard, 2 S. & R. 65 ; Covert v. Irwin, 3 S. & R. 288.

Martin had parted with his interest when these proceedings were commenced. He had not right of possession by reason of his agency, for his agency had ceased, and if not, his principals should have been made plaintiffs : Franklem v. Trimble, 5 Barr 520.

A tenant cannot deny that his landlord had title at the time of the *letting ;* but if the lessor's relation to the property has changed by matter subsequent to the letting, so as to deprive him of the right of possession, the tenant may show that in defence : McCulloch v. Cowher, 5 W. & S. 427 ; Jackson v. Davis, 5 Cowen 135 ; Camp v. Camp, 5 Conn. 291 ; Saterlee v. Mathewson, 13 S. & R. 133 ; Sparks v. Walton, 17 Leg. Int. 148, per Sharswood, J. ; Moore v. Beaseley, 3 Ham. Ohio R. 294 ; Caufman v. The Congregation, &c., 6 Binn. 62 ; Dimond v. Enoch, Add. 357 ; Marley v. Rogers, 5 Yerger 217 ; Jackson v. Rowland, 6 Wend. 666 ; Binney v. Chapman, 5 Pick. 124 ; Willison v.

Watkins, 3 Peters 43; Randolph *v.* Carlton, 8 Ala. 606; Ryers *v.* Farrell, 9 Barb. 615; Tilghman *v.* Little, 13 Ill. 64; 2 Wm. Land's 418, note; 3 Ham. 57; 5 J. J. Marsh 104; 2 B. Monroe 234; 4 Scam. 84; 1 A. K. Marshall 99; 2 Zabr. 261; 2 Smith's Lead. Cas. 658; 24 Verm. 165, 174. The estoppel of the tenant does not apply when he does not controvert anything which he admitted when he took possession: Gregory *v.* Diodge, 3 Bing. 574; Claridge *v.* Mackensie, 4 M. & G. 472; 6 Wend. 666; 9 Barb. 615; 3 Ham. 57. The right of agents is controllable by their principals: Story on Agency, § 403; Sadler *v.* Leigh, 4 Camp. 194; Tainter *v.* Pendergast, 3 Hill 72; Girard *v.* Taggart, 5 S. & R. 27.

*S. C.* and *S. H. Perkins*, for defendant in error.—The second notice was given in strict accordance with the lease. The lessee had violated his promise to deliver up possession.

This is a case between landlord and tenant, and no question of the defendant's title could be raised. It was not proposed to show any dissatisfaction by Martin's grantee. Martin was agent for whom it might concern. The leases are to be taken as Martin's individual act. McCulloch *v.* Cowher was not a case of landlord and tenant. In Jackson *v.* Davis the landlord's title had ceased by operation of law. The facts in Saterlee *v.* Mathewson are not like the present.

The tenants alleging that they rented of other parties, should have given notice to their new landlord to come in under the Act of March 21st 1792, § 8–9.

The law of agency, as treated by Story, does not apply to landlord and tenant, but if it did, there was no offer to show notice of revocation to the agent himself, which is necessary to annul the agency: Story, § 568. The authority had begun to be executed, and Martin had a right to complete it, and evidence should have been offered to show that no rights would be affected by revocation: Story, § 466, 468. Rankin *v.* Tenbrook, 5 Watts 386, and Koons *v.* Steele, 7 Harris 203, show that the evidence was not admissible.

The opinion of the court was delivered, March 5th 1866, by

AGNEW, J.—Martin let the premises with a provision for an amicable action, and judgment in ejectment in case the lease should be determined by its provisions. A judgment having been entered, on the application of Holt, the court opened the judgment to let him into a defence. The case therefore came to trial on its merits, and the defendant made an offer consisting of two parts. The first was to show a conveyance by Martin to Harper of one-seventh of the premises before action entered. There was no offer to show an attornment of Holt to Harper; that Harper renewed

[Holt v. Martin.]

the lease, or was defending the possession for Holt. But the plaintiff still holding six-sevenths, was not precluded from recovering possession according to the terms of the lease. As to the defendant, the covenant was indivisible unless he could show an attornment or other act by Harper to sever the possession. Possession of the term was an entity, while it was only a portion of the reversion which was conveyed to Harper. Martin's very purpose in proceeding upon the covenant in the lease may have been to comply with his sale to Harper, and invest him with the possession by determining the lease.

The second branch of the offer was to show that Martin, in making the lease, acted as agent of certain parties owning eleven twenty-firsts, who had revoked this agency, continued the lease to Holt and collected rent of him. At first sight this might seem competent, but a close inspection discloses a direct conflict with the rule that a tenant shall not dispute the title of his landlord as it was when he took the lease. It was Martin who let the premises to Holt. The relation of landlord and tenant, by the terms of the lease, was exclusively between them. The covenants were those of Martin and Holt alone, and the sealing and delivering also. Upon any breach of the lessor's covenants, the action would lie against Martin and no other. Martin simply described himself as " agent," no more no less, and it is thought this opened the door to the proof. But agent for whom or for what? We are not informed. Was he a mere agent without an estate ; .or himself holding the legal title, was he an agent for purposes connected with the title he held ? None of these appear by the lease. And if agent for others, were they the same persons indicated in the offer ? If not, clearly Martin could rebut the proof offered. His calling himself agent was no admission of title in the persons named in the offer. Thus it was a direct attempt to deny the title of Martin, for if competent, it showed title in third persons, and brought on directly a conflict upon the title of Martin, and not upon the mere termination of the lease.

This conflict of title will be more clearly seen in other aspects of the case. Martin representing the whole title, gave notice to determine the lease according to the covenant of Holt, but the offer was to show it was continued by the owners of eleven twenty-firsts. How could this arrest the proceeding of Martin on the covenant to terminate the lease as to the owners of the remaining ten twenty-firsts ? It could be done only by division of the single covenant to Martin. If the defence be available, it must part the covenant of the tenant among these new landlords, enabling one portion of them to call for a determination of the lease, and another for a continuation and a demand of rent, things wholly inconsistent. If ten say to the agent, serve the notice to quit, and eleven say to the tenant, stay where you are, what is to be

[Holt *v.* Martin.]

done ? This is a new state of things inconsistent with the terms of the lease, and that which was single in the entity becomes forked in the proof. If the tenant holds over under the authority of the eleven, how is the rent to be apportioned ? This again must depend on their title. Thus it seems to be clear that the offer is really and substantially nothing less than a denial of Martin's title in the form in which he made the lease. He assumed to give possession of the whole, and to require its return to himself at the expiration of the term. By the express language of the lease, he alone could use the covenant, while the effect of the proof would be to sever the covenant, and convert an entity into disintegrated parts to be governed by conflicting provisions, thereby introducing incongruities not to be reconciled. Looking at the terms of the lease, the real nature of the defence offered and its impolicy, we think the learned brother was right in refusing the offer.

Judgment affirmed.

By agreement, this decision disposes of the cases of Ridgway, Husted and Auter. Judgment of affirmance will therefore be entered in those three cases.