PLATT v. PHILADELPHIA & R. R. CO. et al.

(Circuit Court of Appeals, Third Circuit. January 7, 1898.)

No. 24.

1. RAILROAD RECEIVERS—CAR RENTALS.

When a receiver is appointed for a railroad company holding rolling stock under a car-trust lease, whereby title remains in the lessor until the rental has paid the purchase price, the lessor is entitled to reasonable compensation for the use of such rolling stock by the receiver, even though the cars are afterwards returned to the lessor.

2. SAME—ADOPTION OF CAR-TRUST LEASES.

A railroad receiver does not adopt car-trust leases simply by taking possession of the cars, and using them temporarily. He is entitled to a reasonable time to ascertain whether it will be profitable or desirable to adopt the leases. And where an experimental arrangement is made under the court's sanction, by which the receiver retains the cars, and pays the rentals during several months with receiver's certificates, this does not amount to an adoption of the lease, in the absence of more definite and final action.

3. SAME.

Where a receiver temporarily using cars held by the company under a car-trust lease, with the sanction of the court, turns over the operation of the road and rolling stock to another company, which agrees to pay "all the expenses of operation." the latter company becomes liable to the owner of such cars for reasonable compensation for their use, as the agent or representative of the receiver.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was an appeal by the Central Car-Trust Company from a decree of the circuit court of the United States for the Eastern district of Pennsylvania, entered in the suit of Thomas C. Platt against the Philadelphia & Reading Railroad Company and others.

J. S. Clark, for appellant.

Thomas Hart, Jr., for appellee Philadelphia & R. R. Co.

Before ACHESON, Circuit Judge, and KIRKPATRICK and BRADFORD, District Judges.

ACHESON, Circuit Judge. It has been decided that, where a railroad company holds rolling stock under a car-trust lease, title thereto remaining in the lessor until the rental has paid the pur-

chase price, the lessor is entitled to reasonable compensation as rental for the use of such rolling stock by the receiver of the railroad company, even though the cars are afterwards returned to the lessor. Myer v. Car Co., 102 U. S. 1; Kneeland v. Trust Co., 136 U. S. 89, 103, 10 Sup. Ct. 950; Thomas v. Car Co., 149 U. S. 95, 112, 13 Sup. Ct. 824. The soundness of this doctrine as a general principle is not controverted by the appellees, nor is it denied by them that, if the appellant's case is within the rule, remuneration on the basis of mileage earnings, as here claimed, would be a fair compensation. It is, however, denied that the above-stated rule is applicable here. The appellees earnestly contend that the receiver of the Pennsylvania, Poughkeepsie & Boston Railroad Company (Henry H. Kingston) adopted the car-trust contracts which subsisted between that company and the Central Car-Trust Company, the appellant, and that the receiver thereby assumed the payment of the future accruing installments of the purchase price of the cars. It is not alleged, and under the evidence it cannot be claimed, that the receiver thus adopted these contracts by any express undertaking. The acts of the receiver and the orders of the court which appointed him—the circuit court of the United States for the district of New Jersey—are relied on as showing such acceptance and adoption of the contracts.

Certainly, the receiver was not bound to adopt these car-trust contracts; and it is quite clear that he did not assume the liabilities of the railroad company thereunder simply by taking possession of the cars, and using them temporarily, under his order of appointment. Oil Co. v. Wilson, 142 U. S. 313, 322, 12 Sup. Ct. 235; U. S. Trust Co. v. Wabash W. Ry. Co., 150 U. S. 287, 299, 14 Sup. Ct. 86. The receiver undoubtedly was entitled to a reasonable time to ascertain whether or not it would be profitable or desirable for him to assume the obligations of these contracts, and to elect whether he would adopt them, or reject them, and return the cars to the trust company. Id. This record discloses that the receiver himself never undertook to exercise in this matter any right of election he may have had. He acted altogether under orders of the court. He was appointed on February 17, 1891, and four days thereafter, on February 21st, he presented to the court a petition setting forth the facts with respect to these car-trust contracts, and in the succeeding month of March he filed two other petitions relating to the same general subject-matter. On April 7, 1891, the court, under the prayers of these petitions, or some of them, made an order authorizing the receiver to issue receiver's certificates to meet the car-trust lease warrant or rental note which fell due March 1, 1891, and the lease warrants or rental notes which should fall due each month thereafter up to and including November 1, 1891. In fulfillment of this order, the receiver and the Central Car-Trust Company, on April 15, 1891, entered into a written contract, whereby it was agreed that the receiver would pay, and the Car-Trust Company would accept as cash, receiver's certificates in payment of the lease warrants or rental notes from March 1 to November 1, 1891, inclusive; and this

arrangement was carried out. In one of his said petitions the receiver represented to the court that he believed that after November 1, 1891, the net revenue in his hands would be sufficient to meet the subsequently maturing installments of the purchase price of the cars. Evidently, in this belief and expectation, the order of court for the issue of these receiver's certificates was made, and the contract of April 15th was entered into. The arrangement between the receiver and the Car-Trust Company which the court sanctioned was temporary and experimental. Under all the circumstances, then, we cannot regard these acts of the receiver and the orders of the court as an absolute adoption of the car-trust contracts. The order of court of April 7 and the contract of April 15, 1891, merely carried forward the car-trust contracts to November 1, 1891. After that date the receiver's relation to these contracts was the same as when he was appointed. Now, the expectation that the net revenues of the railroad after November 1, 1891, would pay the after-accruing installments of the purchase price of the cars wholly failed of realization. Instead of a net surplus, there was a deficit, and on December 28, 1891, the receiver presented to the court a petition for authority to issue certificates to cover five additional monthly installments of car rental. The court held this application under advisement, but it was never granted.

In this state of affairs, the receiver of the Pennsylvania, Poughkeepsie & Boston Railroad Company and the Philadelphia & Reading Railroad Company, under the sanction and order of the court, entered into the agreement of April 28, 1892. By the terms of that agreement the Philadelphia & Reading Railroad Company became the "agent and representative" of said receiver to conduct "the operation of the line of railroad of the Pennsylvania, Poughkeepsie & Boston Railroad Company and its accessories and the traffic thereon," and the Philadelphia & Reading Railroad Company assumed and agreed to pay "all the expenses of the said operations" after May 1, 1892, "taking therefor the entire receipts and revenues to be derived from the said operations and traffic." The rolling stock held by the receiver (Kingston) under the car-trust contracts passed with the Pennsylvania, Poughkeepsie & Boston Railroad into the possession of the Philadelphia & Reading Railroad Company on May 1, 1892, and was retained and used by that company at first, and then by its receivers, until August 31, 1893, when by its election and notice the agreement of April 28, 1892, was terminated. The master has found that the Philadelphia & Reading Railroad Company took possession "of said equipment, and operated the same, with knowledge of the interest of the Central Car-Trust Company therein." It further appears that from May 1 to December 31, 1892, the Philadelphia & Reading Railroad Company paid monthly to the receiver of the Pennsylvania, Poughkeepsie & Boston Railroad Company mileage earnings made by this rolling stock upon the railroad of the latter company, and the said receiver paid the same over to the Central Car-Trust Company. The claim

in dispute is for compensation on the basis of mileage earnings for the use of these cars by the Philadelphia & Reading Railroad Company and its receivers from January 1 to August 31, 1893. The capable master disallowed this claim, not without hesitation. His conclusion is thus stated in his report:

"Though with some doubt, arising from the failure of the parties to specifically express their intention as to any liability of the Philadelphia & Reading Railroad Company for any compensation for the use of this equipment upon the Pennsylvania, Poughkeepsie & Boston Railroad, I do not think that the Philadelphia & Reading Railroad Company, or its receivers, are liable for such compensation to Mr. Kingston, receiver, or to the Central Car-Trust Company."

We are unable to concur in this view. The Philadelphia & Reading Railroad Company took possession of this rolling stock knowing of the appellant's interest therein. It is not to be doubted that the company acted with the fullest knowledge of the facts. At any rate, inquiry was its plain duty. Now, certain it is that, as against the appellant, the company took no greater rights in this leased rolling stock than those of Mr. Kingston, the receiver. As the receiver could not use these cars without making reasonable compensation to the owner, neither could his representative, the Philadelphia & Reading Railroad Company. Then the latter company stipulated to pay all "the expenses of the said operations." We agree with the master that the term "operating expenses" does not embrace the "lease warrants,"—the unpaid installments of the purchase price of the cars. But we think it clear that the stipulation does cover the reasonable compensation to which the owner of these cars was entitled for the use of them, whether such use was by the receiver himself or by his agent and representative. This expenditure was part of the operating expenses. Under the circumstances it must have been within the contemplation of both the parties to the agreement of April 28, 1892, that the Philadelphia & Reading Railroad Company should pay the compensation for the use by it of this rolling stock, for Mr. Kingston, the receiver, turned over the whole railroad property he held under his receivership to that company, and that company was to receive the entire revenue. Finally, if there could be any doubt upon the face of the agreement as to the liability of the Philadelphia & Reading Railroad Company, that doubt was resolved against the company by what the parties did under the agreement from month to month from May 1 to December 31, 1892. Their long course of dealing with respect to mileage earnings definitely fixed the meaning of the agreement in accordance with the appellant's contention.

We have not at all overlooked the allegation now made of a mistake of fact running through all the monthly settlements. In explaining the supposed error, the comptroller of the Philadelphia & Reading Railroad Company in his testimony states that "it is very unusual for any road to report mileage of its own cars on its own road, and, they being Pennsylvania, Poughkeepsie & Boston cars, it did not occur to me that the clerk, in making up the mile-

age account, included the movements of those cars on their own road." These cars, however, did not belong to the Pennsylvania, Poughkeepsie & Boston Railroad Company, as the comptroller here erroneously assumes, but they were the cars of the Central Car-Trust Company, and that company, as we have seen, is entitled to reasonable compensation for their use, whether such use was by the receiver or by his representative. The allegation of mistake in the monthly settlements rests upon a misapprehension as to the rights of the parties. The decree of the circuit court is reversed, and the cause is remanded to that court, with direction to enter a decree in favor of the Central Car-Trust Company.