DAVID FULTON CONOVER,

*vs.*

STERLING STORES COMPANY, a corporation of the State of Delaware.

In the Matter of the Claim of DeHaven Morris and Walter S. Tazewell, trading under the partnership name of Morris & Tazewell, Agents.

*New Castle, May 2, 1923.*

It is a general rule that a receiver of an insolvent corporation is not bound by the executory contracts of the corporation over whose property he is appointed which rule is applicable not only to Chancery receivers, but as well under *Revised Code* 1915, §§ 3883, 3884, and in cases arising under the Federal Bankruptcy Act (*U. S. Comp. St.* §§ 9585-9656).

A contract of lease having a period yet to run is within the general rule permitting a receiver or trustee in bankruptcy to repudiate it if burdensome to the estate.

Where receivers of an insolvent corporation appointed on April 28th remained in possession of leased premises occupied by the corporation until July 25th before repudiating the lease, *held*, that they had not retained possession for an unreasonable length of time before electing to repudiate.

The receiver of an insolvent corporation, or trustee in bankruptcy, cannot by repudiation of a lease contract defeat the lessor's right under the statute for a full year's rent either in arrears or growing due, and his charge or preference on the goods and chattels in the demised premises.

Where a lease contract under seal has been executed by a firm as agent and does not disclose the name of the alleged principal, *held*, that such lessors, though ostensibly acting as agents, had authority to accept a surrender of the premises from a receiver of an insolvent tenant, thus defeating their statutory right to a year's rent.

A surrender of leased premises before the end of the term can only be effected by an agreement of the parties.

The acceptance of a proffered surrender of premises before the end of the term need not be expressed in a formal manner, but may be by acts which are not in accord with the continuing existence of the lease.

The burden of proving a surrender of premises before the end of the term and acceptance by the lessor is upon the receiver of the lessee asserting it.

Where a landlord accepts from the tenant keys to demised premises and thereafter attempts to rent same, these facts standing alone will not indicate an acceptance of the surrender, nor will mere silence of the landlord under such circumstances generally indicate an acceptance.

The acceptance of the keys of demised premises from a receiver of an insolvent tenant and the placing of a "for rent" sign, together with a letter written just after such acceptance of the keys notifying the receiver that there was one month's rent remaining unpaid and requesting settlement, *held* sufficient to establish an acceptance of the surrender of the premises, though the term was not up, and defeat the statutory right to the year's rent.

PETITION FOR PAYMENT OF RENT from receivership estate for unexpired term of lease. Receivers were appointed for Sterling Stores Company, an insolvent corporation. Prior to the appointment, the insolvent company was lessee of certain premises under a written lease. The lease is dated June 17, 1921, and runs for two years commencing June 25, 1921, and ending June 25, 1923. The rental is eighteen hundred dollars a year payable in monthly installments of one hundred and fifty dollars in advance. The lessors are "DeHaven Morris and Walter S. Tazewell, trading as Morris & Tazewell, Agents." Not only in the body of the lease are the lessors described as "Morris & Tazewell, Agents," but they execute it by the same name.

The receivers were appointed April 28, 1922. They continued to occupy the leased premises and to conduct the insolvent's business therein until June 28, 1922, when, in accordance with the order of this court, they sold all the assets in their custody at public sale. Thereupon, before the expiration of the current rental month, one of the receivers notified Morris & Tazewell that they were surrendering the lease. This he did by calling at their office and leaving the keys to the premises with a clerk, telling her to advise her employers that the receivers were surrendering the posession. A "For Rent" sign was placed in the window by the landlords.

This is a petition by Morris & Tazewell to have the balance claimed to be due under the lease as rent paid to them in full up to the expiration of the term, to-wit, to June 25, 1923, to which the receivers have filed exceptions.

*Robert G. Harman*, for the petitioners Morris & Tazewell.

*Edmund S. Hellings*, for the receivers.

THE CHANCELLOR. It is admitted that the rent was paid in full to July 25, 1922. The receivers contend that nothing is due for rent since that date. They base their contention on the propo-

sition that they were entitled to elect, and did elect, to terminate the lease, thereby cancelling all claims for rent yet to accrue under it. The petitioners contend that if the right to terminate the lease be conceded, yet, under the Delaware statute (*Rev. Code* 1915, § 4595), the lessors are entitled to be paid a full year's rent, and that the same is due them whether the rent be in arrear or growing due. In reply, the receivers further contend that if the court should be of this opinion, yet such could not be the case here because, they claim, the evidence shows that the landlords accepted a surrender of the premises and thus terminated all the obligations under the lease.

In *DuPont v. Standard Arms Co.*, 9 *Del. Ch.* 315, 81 *Atl.* 1089, the following appears:

"The right of the receiver to terminate all unfulfilled contracts made by the company before his appointment is clear. He may choose to continue one and terminate another. A receiver is not bound by the executory contracts of the corporation over whose property he is appointed, and subject to the control of the court he may abandon and repudiate them, if in his opinion it would not be profitable or desirable to adopt and perform them, and he is entitled to a reasonable time within which to make his election."

This is undoubtedly the general rule. It applies not alone to Chancery receivers appointed in the exercise of general equity jurisdiction when possession only and not title is obtained by the receiver. It applies as well to statutory receivers appointed under such statutes as are found in Delaware authorizing the appointment of receivers for insolvent corporations (*Rev. Code of* 1915, § 3883), even though such receivers have title cast upon them by operation of law as is the case here (*Revised Code of* 1915, § 3884). The general rule above quoted from *DuPont v. Standard Arms Co.*, *supra*, was announced in the same sort of receivership as is here involved. In cases arising under the *Federal Bankruptcy Act* (*U. S. Comp. St.* §§ 9585-9656), the trustee upon whom title is cast by application of law as it is cast upon the statutory receiver in this State by operation of law, the same general rule is held to prevail, viz., that the trustee has the right to elect within a reasonable time whether he will adopt or reject executory contracts. The difficulty encountered in the cases, where an election to repudiate is exercised, is to determine whether the contract is of such character as to give the other party an allowable claim for damages.

A contract of lease having a period yet to run, falls within the general rule that the receiver or trustee in bankruptcy may, if it is deemed burdensome to the estate, elect to repudiate it. *Oil Co. v. Wilson*, 142 *U. S.* 313, 12 *Sup. Ct.* 235, 35 *L. Ed.* 1025; *Railroad v. Humphries*, 145 *U. S.* 101, 12 *Sup. Ct.* 787, 36 *L. Ed.* 632; *Carswell v. Farmers' Loan & Trust Co.,* 74 *Fed.* 88, 20 *C. C. A.* 282; *Platt v. Phila. & Reading R. Co.*, 84 *Fed.* 535, 28 *C. C. A.* 488; *De Wolf v. Royal Trust Co.*, 173 *Ill.* 435, 50 *N. E.* 1049; *Nelson v. Kalkhoff*, 60 *Minn.* 305, 62 *N. W.* 335; *Fisher v. Columbia Nat. Bank, et al.*, 54 *Ind. App.* 558, 103 *N. E.* 119; *Black on Bankruptcy*, (*3d Ed.*) § 307. There can be no doubt but that the receivers had the right to elect to repudiate the lease in this case. Their remaining in possession of the premises where the insolvent's assets were located was not for an unreasonable length of time. It was no longer than was reasonably necessary to allow them to determine whether an adoption of the lease would be advantageous to the estate, and, having determined that it would not be, to effect a sale of the goods.

But, notwithstanding they could, and did, refuse to accept the lease, could they by rejection of it destroy the landlords' claim for rent for the period for which the statute of this State gives a preference? I think not. In the case of *In re Mitchell*, 116 *Fed.* 87, which was in the District Court of the United States for the District of Delaware, Judge Bradford had occasion to examine the pertinent provisions of the Delaware statute bearing on the landlord's preferential claim for rent. That was a case in bankruptcy, and it holds that under the Delaware statute (following the language of the syllabus):

"A landlord has, as against creditors of his tenant, a lien, charge or preference on the goods and chattels of his tenant on the demised premises for rent growing due for the balance of the renting year, and this right of the landlord will be recognized and enforced as against the proceeds of such goods and chattels when sold by a trustee in proceedings in bankruptcy against the tenant."

This conclusion, made to be sure in a bankruptcy case, is nevertheless applicable in principle to a receivership administration under the Delaware statute. I can see no reason why it should not be so. The statute authorizing the Chancellor to appoint receivers for insolvent corporations does not, like *Section* 64 of the

*Bankruptcy Act* (*Section* 9648) in terms specify the priorities which shall prevail in administering the estate. But this is of no consequence as distinguishing such a case as *In re Mitchell* from cases of the instant kind; because it is a principle which equity recognizes in distributing funds in its possession for administration to accord full recognition to existing legal rights and priorities. *In re Lord & Polk Chemical Co.*, 7 *Del. Ch.* 248, 44 *Atl.* 775. This decisional principle, therefore, supplies to a receivership administration the same rule that *Section* 64 of the *Bankruptcy Act* supplies to causes in bankruptcy.

Receivership proceedings under *Section* 3883 of the *Revised Code of* 1915 are for the benefit of stockholders and creditors of the insolvent corporation. Where a receiver is appointed the assets of the corporation may, or may not, be liquidated and distributed, depending on the facts of the particular case. Where the assets are all sold, however, and distribution is about to take place among the creditors, as here, it is beyond all reason to deny to the landlord the preference, before creditors, of a year's rent given by the statute. The law gives him a lien upon the goods on the premises to that extent against any creditor who might sell under an execution levy. Here, however, in the receivership cause, no creditor is, of course, selling the goods on a levy. But as the procedure in this particular case turns out, a receiver has in fact sold all the goods and the proceeds will go to pay all individual creditors insofar as the same are ratably applicable. In other words, a sale under judicial process has here been conducted for the benefit of all creditors, and it is sought to shut the landlord out from his claim for rent, when if any one of the creditors had obtained judgment and sold the goods under execution process, the landlord's claim for a year's rent, either in arrear or growing due, would come in ahead of him under the statute. Shall a proceeding which in its practical aspects sells the goods for the benefit of the claims of all the creditors, be allowed to give each one of the group an advantage as against the landlord which, if it was individually sought by way of execution, would be denied under the statute? It seems to me that equity would be required to stretch reason to the snapping point if it gave to this question any other than a negative answer.

The landlord's lien under the statute for a full year's rent either in arrear or growing due attaches, of course, only to goods and chattels on the demised premises. The claim for preference here asserted is confined to the proceeds derived from goods and chattels so liable. On this branch of the case, the conclusion is, that the claim for a year's rent either in arrear or growing due is properly allowable ahead of the creditors against the proceeds of sale of the goods and chattels subject to the lien. Unless there is something else in the case which makes this conclusion inapplicable, the claim must be allowed.

The receivers contend that there is. This consists, they assert, in the fact that the receivers made and the landlord accepted surrender of the premises. If such surrender was made and accepted it took place on July 25, 1922, up to which date it is admitted rent was paid in full. The attempted surrender was to, and the alleged acceptance thereof was by, Morris & Tazewell. Evidence was admitted, subject to being ignored if upon consideration the Chancellor should deem it irrelevant, to show that the premises in question were owned by George B. Booker; that Morris & Tazewell, Agents, who appear in the lease as lessors, were in fact Booker's agents; that the scope of their authority as agents went only so far as to authorize them to lease the premises, collect the rents and oversee the property; and that they had no authority to accept a surrender on behalf of Booker. The claimants, therefore, contend that even if it be found as a fact that the receivers surrendered to Morris & Tazewell and they in turn assumed to accept such surrender, yet, because of the limited authority of the agents, such surrender and acceptance cannot bind Booker; and in support of this contention the claimants cite numerous cases to the effect that authority from the owner to an agent to exeucte a lease and collect rents does not in law carry an implied authority to cancel the lease by accepting a surrender thereof. The authorities cited in this connection support the contention as stated. But I conceive them to have no application here. This is for the reason that here the lessors named in the lease are "Morris & Tazewell, Agents." By that name also the lessors executed the lease. Booker nowhere appears as a party to the lease. This presents a situation entirely different from that

presented by the cases cited by the claimant, for in none of those cases does it appear that the alleged agent was named as the lessor. So far as the statement of facts in each case discloses, it appears that in every instance the lease was executed by the principal by and through his agent.

In the instant case the situation is, as stated, quite different. Here is a lease wherein "Morris & Tazewell, Agents," are the lessors. For whom they are agents, the indenture of lease does not disclose. The instrument is under seal. Booker is not a party to it. Under such circumstances, the word "agents," written after the names of the lessors, is regarded merely as *descriptio personæ*. Where such is the case, the lessor, though described as agent, alone can sue on the covenants in the lease. *Holt v. Martin, Agent*, 51 *Pa*. 499; *Bedford v. Kelly*, 61 *Pa*. 491. The alleged principal, not being named as a party to the instrument, can neither distrain for rent (*Seyfert v. Bean*, 83 *Pa*. 450), nor maintain an action to recover damages for breach of covenant to repair (*Loeb v. Barris*, 50 *N. J. Law*, 382, 13 *Atl*. 602). The nearest approach to the principle here involved in the Delaware cases is in *Robinson v. Ortiz, et al.*, 6 *Boyce*, 370, 100 *Atl*. 408, where it was held that an undisclosed principal could not avail herself by way of estoppel of the benefits of a bond given to her agent.

The claimant who files the pending claim is not Booker, but Morris & Tazewell, Agents. The petition asking its allowance as a preferred one is signed by Morris & Tazewell, Agents. If Booker had filed it, it would be disallowed, because the written lease fails to show him to be a party in interest. The claimants, therefore, by their own petition impliedly, at least, recognize the propriety of having themselves, and not their alleged principal, regarded as the lessors. The logical consequence from the foregoing is that Morris & Tazewell had full authority to accept a surrender of the leased premises, not as agents of Booker duly authorized in that behalf, but as lessors, parties to the lease.

The only question that remains is one of fact, viz., was there a surrender by the receivers to Morris & Tazewell and an acceptance thereof by them? A surrender cannot take place except by agreement of the parties. There must not only be a tender by the tenant, but as well an acceptance by the landlord. That there

was a tender by the tenant in this case (through the receivers) is not disputed. The landlords, however, insist that they never indicated an acceptance. In order to effect an acceptance, it is not necessary for it to be expressed in formal manner. Where the tenant assumes to surrender the premises and the landlord does acts which are not in accord with the continuing existence of the lease, then by operation of law the tenancy is at an end. It may further be stated that the burden of proof upon the question of whether a surrender has taken place is in this case upon the receivers who assert it. These principles are elementary. The difficulty here, as in most cases, is not with the principles of law applicable, but in their application to the facts.

One of the receivers went to the office of Morris & Tazewell, the lessors, and left the key to the premises with a young lady clerk, telling her that the receivers were giving up possession of the store and that the rent was paid in full. This was on July 25, 1922. The message he left with the clerk evidently was duly delivered to her employers, the landlords, for on the same day they wrote one of the receivers referring to the matter. It seems that the receiver was under the impression that the rent had been paid in full up to that date. This was not correct. It was in arrear for one month. The landlords, in this letter, objected to the attitude of the receivers, basing their objections solely on the receivers' position that nothing would be paid for July. This is what I gather from their letter to the receiver. It said:

"We shall certainly expect you to send us a check for the months rent, which we are entitled to as you occupied the store during the greater part of the month to July 25th. This is a just claim and we must ask you to pay for what is right."

This letter constituted the response which the landlords made to the receiver's message surrendering the possession. It will be observed that the landlords claimed in this letter only one month's rent which was in arrear as due them. The receiver, discovering that he had been in error as to that matter, paid the rent for the month thus claimed on the next day.

The landlords also placed a "for rent" sign on the premises and sought to secure new tenants. They claim that in doing this, they were acting solely in behalf of the receivers to whose account

they would credit whatever they might obtain by way of rental. They further state that they informed the receivers that the placing of the sign and the attempt to rent the premises were only in the receivers' behalf and not on their own account. The receiver with whom these transactions occurred, in his testimony, flatly contradicts this. Witnesses were present with Mr. Morris when he testifies to having so notified the receiver, but none were called to corroborate his statement. There is also a sharp conflict of testimony between the receiver and Mr. Morris as to when the "for rent" sign was placed in the store, whether before or after the sale.

It may be conceded that if a landlord accepts from the tenant the keys to the demised premises and thereafter attempts to rent the same, these facts standing alone will not indicate an acceptance of a surrender. Generally, the mere silence of the landlord under such circumstances will not indicate an acceptance. Though it has been held that receipt of the keys and the putting the property in condition and on the market for rent, when coupled with silence on the part of the landlord and a subsequent assertion by the landlord of his claim based on the continuance of the lease, will, if the attempted surrender be by the original tenant's receiver, constitute an acceptance by the landlord. *In re Heilbron Bros.*, (*D. C.*) 226 *Fed.* 803. That case might seem to attribute a different significance to the same facts when asserted against the original tenant from what will prevail when they are asserted against the tenant's receiver. The learned judge who decided the case, however, indicated his doubt that such distinction had any basis on which to rest. Such basis may exist, but it is not apparent to me. In that case, the fact of surrender was found to exist under such circumstances as above stated. In the instant case, all the circumstances appearing in that case are substantially present except that instead of mere silence on the part of the landlords when the attempted surrender was made by the receiver, it appears that a protest against the receivers' attitute was made. But this protest did not go to the fact of surrender. It went only to the receivers' claim that the rent was paid in full. The letter above quoted constituted in effect the landlords' response to the receivers' tender of the surrender, and the only objection made was that

rent for July ought to be paid because the receivers had used the premises for the greater part of that month. No mention is made of the claim now set up, viz., that accruing rent for a full year thereafter was expected to be paid. The receivers paid for July and heard nothing more about the matter until October 14, 1922, when demand was made for rent up to October 25. In reply to this the receivers by letter denied liability by calling the attention of the landlords to the fact that they had given up the possession to them in July, that they had accepted delivery of the keys, had placed a "for rent" sign in the store, and had done nothing since to indicate a continuation of the tenancy. To this letter there was no response. Later, on December 12th, the landlords wrote setting up the claim of a continuing tenancy, stating that they had had opportunities to temporarily rent the premises and then had an application for a temporary renting for two weeks, and asking authority from the receivers to rent the store for the receivers' account without prejudice to their (the landlords') rights. To this the receivers replied again insisting on their position that the premises had been surrendered to the landlords and accepted by them.

On this showing, I am of the opinion that the receivers' contention that there was a surrender and acceptance of the lease is sustained by the proof. The delivery of the keys, the receipt of the same, the placing of the "for rent" sign, may, as stated, be conceded to be not sufficient alone to evidence an intent on the part of the landlords to accept the tendered surrender. But when the further facts appear, viz., the letter of July 25, and failure for nearly three months to demand more rent, I am persuaded that an intent to accept the premises is made out by the proof. It may be added that Mr. Morris when asked in substance to reconcile his firm's letter of July 25 with the present claim failed to do so. Neither can I, under the circumstances. It appears from the evidence that the landords' conduct was consistent only with an acceptance by them of a surrender of the premises, and that they changed their attitude only when they were not succeeding in securing a new tenant.

The claim is disallowed, and an order will be entered accordingly.