CARSWELL v. FARMERS' LOAN & TRUST CO. OF NEW YORK et al.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1896.)

No. 352.

RECEIVERS—ADOPTION OF LEASES.

The C. Ry. Co. made a contract with the U. Depot Co. for the use of its depot, upon making certain payments therefor, in the form of repairs, taxes, and interest on bonds issued by the depot company. Shortly afterwards a receiver of the railway company was appointed in a foreclosure suit. The receiver took possession of the depot, and retained it for 10 months, the officers of the depot company being anxious that it should be so retained, and negotiations being all this time carried on between them and the receiver to fix upon a reasonable rent, it being understood by both parties that the earnings of the railroad were inadequate to justify the payments called for by the contract. At the end of this time, a receiver of the depot company was appointed, in a foreclosure suit against it; and, upon his refusal to allow the use of the depot rent free, the railway receiver surrendered the property to him, and he intervened in the railway foreclosure suit, to enforce against the railway receiver the covenants of the lease. A master, to whom the intervening petition was referred, reported, as a reasonable rent of the depot, a much smaller sum than that called for by the lease. *Held*, that the receiver of the railway company had not elected to adopt the lease of the depot, or to retain possession against the will of the depot company, and was liable only for a reasonable rental, and not for the sums stipulated by the contract.

Appeal from the Circuit Court of the United States for the Southern Division of the Eastern District of Tennessee.

This case presents a controversy as to the liability of the receiver of the Chattanooga Union Railway Company for the use and occupation by him, as receiver of the railway company, of the property of the Chattanooga Union Depot Company. The facts necessary to be stated are these: The Chattanooga Union Railway Company (hereafter called the "Railway Company") is a corporation of the state of Tennessee, owning and operating a belt line of railway. The Chattanooga Union Depot Company is also a corporation of the state of Tennessee, owning a railway depot and certain railway terminal facilities in the city of Chattanooga, Tenn. On the 30th day

of December, 1891, a contract was executed between the railway company and the depot company, which provided that the railway company should have a perpetual right to occupy the property of the depot company "rent free," except and subject to the following charges: (1) The railway company agreed to keep the property of the depot company in perpetual repair at its own expense. (2) The railway company agreed to pay all taxes which had or might hereafter accrue against the property of the depot company. (3) The railway company agreed to assume and pay all interest which had accrued or might accrue upon a series of 150 bonds of $1,000 each, bearing date January 1, 1891, and maturing January 1, 1910, with interest payable semi-annually at 6 per cent. (4) The railway company, at the maturity of these bonds, was to assume and pay them off. (5) If the railway company did assume and pay off the said bonds, it should have the option of remaining in possession and use of the depot property, subject only to the continued payment of taxes for so long a period as it saw fit to use and occupy the property. A clause in the aforesaid contract provided that if the railway company should make default in respect of any of the charges or payments assumed by it, and such default should continue for a period of six months, then the depot company might, at its option, declare a forfeiture of the contract, and resume possession of its said property, and hold and occupy the same until the revenues derived therefrom should discharge the payments in default.

Within a few weeks after the railway company had entered into this contract and taken possession of the property of the depot company, a bill was filed in the United States circuit court at Chattanooga against it and other defendants, by one W. S. Davis, who alleged that the railway company had mortgaged its property under two or more mortgages to secure two or more distinct series of bonds, and that the Farmers' Loan & Trust Company of New York was the trustee under each of said mortgages. Davis claimed to be the owner of a large number of coupons representing interest past due and in default upon the bonds so secured by the mortgages aforesaid. The principal object of his bill was to enforce the mortgages as a security for the payment of the interest so in default. He further alleged that the railway company had entered into a contract with the Chattanooga Union Depot Company, by which it guarantied the payment of the principal and interest of 150 bonds of $1,000 each, made and executed by the said depot company, and secured by mortgage under which the Farmers' Loan & Trust Company was the trustee. Upon grounds not necessary here to mention, the complainant Davis sought to have the said guaranty of the bonds of the said depot company declared fraudulent and void. The court was asked to appoint a receiver to take possession of the property of the railway company, and hold and operate the same for the benefit of the parties entitled, until a final decree of sale should be pronounced. The defendants to this bill, among others, were the Chattanooga Union Railway Company, the Chattanooga Union Depot Company, and the Farmers' Loan & Trust Company. Such proceedings were had under this bill as that on the 4th day of February, 1892, H. S. Chamberlain was appointed receiver, and placed in possession of all of the properties of the railway company, including its rights and interests under the lease aforesaid in the property of the depot company. Subsequently, the Farmers' Loan & Trust Company filed an original independent bill in the same court, seeking, as trustee, under the mortgages of the railway company, to foreclose the said mortgages for the benefit of all the beneficiaries thereby secured. This bill was, by order of the court, consolidated with the Davis bill, and the receivership under the Davis bill extended to the latter bill. Afterwards the Farmers' Loan & Trust Company filed another and original bill against the Chattanooga Union Depot Company, for the purpose of foreclosing the mortgage executed by the depot company to secure the issue of bonds heretofore mentioned. Under this latter bill, W. W. Milam was appointed receiver of the property of the depot company, and subsequently, upon his resignation, the appellant, Carswell, was appointed his successor. Thereafter, Carswell, as receiver for the depot company, filed his intervening petition in the consolidated cause against the railway company, for the purpose of enforcing against the receiver of the

railway company the covenants in the lease under which the railway company had been let into possession of the property of the depot company, and praying that the claim of the depot company for rentals should be adjudged a liability against the property of the railway company superior to the obligation of the bonds of the latter company. This claim was referred to a special master, to take proof and report thereon. After taking proof, the master reported that the receiver was liable for rents according to the covenants of the lease between the railway and depot companies. He reported a liability aggregating $8,220, with a recommendation that the same be paid as a part of the costs and expenses of the administration of the railway company's property. This report was excepted to by the complainants in the suits against the railway company, upon the ground that the receiver was liable only for a reasonable rental, and not for the rental stipulated in the lease. This exception was sustained, and the matter re-referred to the master, to report what would be a reasonable rent. Upon this reference, the master reported that the receiver went into possession of the leased premises February 4, 1892, and remained in possession until December 15, 1892, when he surrendered the depot property to Receiver Carswell. He also reported that, under the evidence, a rental of $150 per month, amounting to the sum of $1,555, would be reasonable and just. He further reported that the receiver had collected from sublessees under the railway company the sum of $899.60, all of which had been applied in the payment of taxes and repairs, except $72.14. Exceptions of appellant were overruled, and a decree rendered directing the receiver to pay, as an expense of the trust, the said sums, aggregating $1,627.14. From this decree Carswell, as receiver for the depot company, was allowed an appeal, and has assigned error.

J. H. Barr, for appellant.

Lewis Shepherd and Wm. L. Frierson, for appellee.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

LURTON, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The assignment of error upon which the rightness of the decree below must turn is that which complains of the action of the court in not allowing rentals against the receiver, and out of the corpus of the fund arising from the sale of the mortgaged property of the railway company upon the basis of the stipulation of the contract between the railway company and the depot company. Confessedly, the property of the railway company, at the date at which that contract was made, was, and is now, utterly insufficient to pay the creditors secured by mortgages which long antedated that lease arrangement. Any claim for rentals as between the lessor and lessee is therefore an unsecured claim, and not entitled to be paid until the secured creditors have been first fully satisfied. The income derived by the receiver from the operation of the railway company is not more than sufficient to pay the necessary operating expenses, and any allowance for rentals of the depot property must come out of the corpus of the mortgaged property, and to that extent diminish the payment of the creditors secured thereon by mortgage. The appellant, however, seeks a preference over the mortgage creditors by reason of the fact that the receiver of the railway company was placed in possession of the property of the depot company, and remained in the use and occupation of that property for a period of about 10 months. This, it is contended, operated as an adoption of the lease, and an assumption by the receiver of the obligations and

stipulations therein in respect of rent while he should remain in possession. A receiver appointed by a court of equity does not take or hold as an assignee. He is the mere hand of the court appointing him, and his custody is that of the court, and is for the benefit of all who may ultimately appear entitled under the decrees of the court. The mere fact that Chamberlain was appointed receiver of the property of the railway company, including its leasehold interest, did not make him liable for the covenants of the lease under which the railway company held the property of the depot company. Neither did the mere fact that he took possession of the depot company's property operate as an adoption of the lease. Whatever the doubt at one time entertained as to the effect of a receiver taking possession of leasehold property under an order of a court of equity, it is now well settled that such a receiver may take and retain possession of leasehold interests for such reasonable time as will enable him to intelligently elect whether the interest of his trust will be best subserved by adopting the lease, and making it his own, or by returning the property to the lessor. Oil Co. v. Wilson, 142 U. S. 313–322, 12 Sup. Ct. 235; Railroad Co. v. Humphreys, 145 U. S. 82, 12 Sup. Ct. 787; Kneeland v. Trust Co., 136 U. S. 89, 10 Sup. Ct. 950; Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824; United States Trust Co. v. Wabash W. R. Co., 150 U. S. 287, 14 Sup. Ct. 86; Park v. Railroad Co., 57 Fed. 803; Farmers' Loan & Trust Co. v. Northern Pac. R. Co., 58 Fed. 257; New York, P. & O. R. Co. v. New York, L. E. & W. R. Co., Id. 268.

The depot company was a party defendant to the suit in which the receiver was appointed; and appears to have made no objection to the appointment of a receiver, nor to have made any application to the court for a restoration of its property. The suggestion that the retention by the receiver of the possession of this property for 10 months was unreasonable and unnecessary to enable him to make an intelligent election is, we think, untenable in view of the circumstances of this case. The evidence shows that the contract rent stipulated for in the lease was quite extravagant, and that the earnings of the railway company under the receiver were wholly inadequate to justify an assumption of the terms of that contract. This fact appears to have been clearly understood by both the receiver and the officers of the depot company. So, it is clearly established that the receiver at no time had the slightest intention of adopting the lease, and that he remained in possession as long as he did only because of pending negotiations actively kept alive by the officers of the depot company concerning an agreement as to a reasonable rent. It is unnecessary to go into the details of the evidence touching these negotiations. It is sufficient to say that until a receiver was appointed under another and independent proceeding, for the property of the depot company, that the active officers and agents of the depot company, including one Erb, who was the sole stockholder of the depot company, were exceedingly anxious that the receiver should continue in possession at any reasonable rental, rather than the property should lie idle and suffer by disuse. These negotiations concerning the terms upon which the railway

receiver should remain in possession continued down to the 26th day of November, 1892, when W. W. Milam was appointed receiver for the depot company under an order which recited that the depot and terminal facilities were then being used by the Chattanooga Union Railway Company and the Chattanooga Southern Railway Company, and which directed that the possession and control of the receiver then appointed "should not interfere with the rights of said railroad companies to the use of said depot so far as the same are secured to the said companies by virtue of any existing contract by and between the depot company and said railway company, unless otherwise ordered or directed hereafter by this court." It is well to here observe that this order was not made in a case to which the railway company or its receiver was a party, and therefore it in no way operated as an adoption of the terms of any contract between the railway company and the depot company touching rentals for the property of the latter. The evidence shows that the receiver thus appointed thought it preferable that Chamberlain, the railway company's receiver, should occupy the depot rent free, rather than that the property should be abandoned, and that he agreed that this might be done if the court would make an order sanctioning it. This order, when requested, was opposed by Mr. Barr, counsel for the complainant trustee in the foreclosure suit against the depot company; whereupon the premises were at once surrendered to the receiver for the depot company. The circumstances all tend to establish very satisfactorily that the retention of possession by the receiver did not indicate an intention to adopt the lease, or to retain possession against the will of the depot company. Upon the contrary, the clear inference is that the possession was retained practically by consent of the depot company, and under an implied understanding that the receiver should occupy subject to a reasonable rent. That the parties were unable to agree upon a reasonable rental does not operate as an adoption of the unreasonable stipulations of the lease. The evidence abundantly establishes the reasonableness of the rental allowance made by the master, and confirmed by the court. The decree is accordingly confirmed.