## CHAPMAN v. FIRST NAT. BANK OF SEATTLE et al.

District Court, W. D. Washington, N. D. December 5, 1929.

No. 705.

Bates & Peterson, of Tacoma, Wash., for plaintiff.

Byers & Byers and Philip D. MacBride, all of Seattle, Wash., for defendants.

NETERER, District Judge. April 8, 1929, defendants Macbride and Anderson and the W. B. Foshay Company, a Delaware corporation, entered into an agreement whereby Macbride and Anderson, as owners and controllers, agreed to sell, and the W. B. Foshay Company agreed to buy, certain capital stock of the Kitsap County Transportation Company and eight subsidiary Washington corporations, all engaged in marine or land transportation, for $1,075,000, purchaser assuming to pay $250,000 bonded indebtedness. Pursuant to the terms of said agreement, Macbride and Anderson thereby caused to be deposited in the First National Bank of Seattle in escrow the following properties, agreements, resignations, proxies hereafter set out:

(1) Certificates for 2,983 shares of preferred class B stock of Kitsap County Transportation Company.

(2) Certificates for 6,200 shares of non-par value common stock of Kitsap County Transportation Company.

(3) Certificates for 1461¼ shares of capital stock of Washington Route.

(4) Certificates for 4,000 shares capital stock of Puget Sound Freight Lines.

(5) Certificates for 788· shares capital stock of Whidby Island Transportation Company.

(6) Assignment of 440 shares of capital stock of Ferry Dock Company.

(7) Assignment of all of the capital stock of Puget Sound Terminal Company.

(8) Assignment of all the capital stock of Percival Dock Company.

(9) Certificates for all of the capital stock of Merchants' Transportation Company.

(10) Certificates for all of the stock of Puget Sound Freight and Ferry Lines.

(11) Certificates for 560 shares of the capital stock of Ferry Dock Company.

(12) Proxies executed by the owners of all of the capital stock above described.

(13) Resignations of the officers and directors of all of the corporations above described.

(14) Executed indemnity agreement in behalf of Puget Sound Freight Lines.

(15) Executed indemnity agreement in behalf of Kitsap County Transportation Company.

(16) Agreement not to enter into similar business made by J. L. Anderson, Philip D. Macbride, and F. E. Lovejoy.

(17) Ten shares of the stock of each company (being a part of the shares above described) are issued in single shares and indorsed in blank.

(18) Agreement between Philip D. Macbride and J. L. Anderson, sellers, and W. B. Foshay Company, buyer, for sale of certain stocks, dated April 8, 1929.

Thereafter the Foshay Company assigned said contract to the Public Utilities Consolidated Corporation.

By the terms of the agreement of sale, $75,000 of the purchase price was paid upon the execution of the agreement, and thereafter $100,000 was to be paid on the 8th day of each of the 5 months immediately following, and $27,000 to be paid on the 8th day of the sixth, seventh, eighth, ninth, tenth, and eleventh months, together with interest, and, on or before 18 months after April 8, 1929, the sum of $265,000, with interest, interest on all deferred payments to be 6 per cent. per annum.

Payments were duly made up to and including July 8, 1929. Default was made for the payment due on August 8 following. Anderson, Macbride, and Lovejoy, owners of stock, " * * * discussed with as many stockholders as we could get in touch with, * * *" and, after the Foshay Company was so advised, by agreement the payments were modified as follows: $25,000 August 8, 1929, in lieu of $100,000; September 8, 1929, and October 8, 1929, $75,000 on each date in lieu of $100,000; November 8, 1929, $75,000 in lieu of $27,000; December 8, $75,000 in lieu of $27,000; January 8, 1930, $75,000 in lieu of $27,000; February 8, 1930, $75,000 in lieu of $27,000; March 8, 1930, $75,000 in lieu of $27,000; and on or before April 8, 1930, the balance of the purchase price, to wit, $150,000; all payments to bear interest from date of the original contract at 6 per cent., payable on each installment due date.

Default was made on September 8, following, but, after some correspondence by wire and mail, this amount was paid September 23. Default was again made on October 8. On October 7 a check drawn on the Foshay Trust & Savings Bank in Minneapolis was sent to Macbride and Anderson for the $75,000 due on October 8, together with interest. This check was presented in due course for payment, and was protested on the 14th day of October for nonpayment.

On October 26, 1929, Macbride and Anderson wired W. B. Foshay Company, Minneapolis, Minn., as follows:

"Mailing notice requiring payment by November fourth or contract terminated."

On the same day defendants forwarded the following notice by registered mail:

"Seattle, Washington, October 26, 1929.

"W. B. Foshay Co., Foshay Tower, Minneapolis, Minn. Attention Mr. W. B. Foshay or Mr. H. H. Henley: Gentlemen: On, account of your failure to make the payment due October 8th, you are hereby notified that the undersigned, as Sellers in that certain agreement dated April 8, 1929, elect to terminate said agreement in accordance with the provisions of the paragraph entitled 'forfeiture' on page 19 of said agreement, and unless the installment of purchase price due October 8th, to-wit: $75,000.00 with accrued interest thereon, is paid to us in cash at Seattle, Washington, on or before the close of business on November 4th, 1929, that all your rights as buyer under said contract will be forfeited, the contract terminated and at an end, and that the sellers will retain all pay-

ments heretofore made by you as liquidated damages for the breach of said agreement.

"J. L. Anderson

"Philip D. Macbride."

On October 26 the following answer was received by wire:

"Your wire received Foshay in New York looks very favorable for deal next week

"Henley"

On October 28, the following wire was received by the defendant Macbride:

"New York, N. Y. October 28, 1929.

"Philip D. Macbride, Atty., Seattle, Washington. Matters here progressing. Will have definite decision this week in plenty of time to advise you definitely by November fourth. Nothing sure but looks good. Certainly appreciate time given us.

"Foshay"

On November 1st, in the United States District Court for the District of Minnesota, Fourth Division, at the suit of O. M. Spratt Corporation against the Public Utilities Consolidated Corporation, the plaintiff, Joseph M. Chapman, was appointed as receiver of said Public Utilities Consolidated Corporation, and qualified as receiver of said court.

On November 8, 1929, an action was commenced in this court by O. M. Spratt Corporation against the Public Utilities Consolidated Corporation, alleging jurisdictional facts and the appointment of a receiver by the United States District Court for the District of Minnesota, and alleging that considerable of the assets of the insolvent corporation are located within the jurisdiction of this court, and asking that an order be made confirming the appointment of Chapman as receiver within the jurisdiction of this court ancillary to said proceeding, and by order duly entered the complainant herein was duly appointed receiver of this court of all such assets and property within this jurisdiction.

The agreement between the parties provides "that the times for payment of the several installments of purchase price hereunder and the due performance of all and singular the terms and conditions of this Agreement is hereby declared to be of the essence hereof and in case the buyer shall fail to make any of the payments herein provided within the times herein provided, or shall fail to perform the other terms and conditions hereof on its part to be performed, then and in that event all payments made to the sellers shall at the option of the sellers be forfeited to the sellers as liquidated damages and this agreement shall terminate and be at an end.   *   *   *"

The plaintiff, as receiver, alleges that approximately $80,000, earnings and receipts of the corporations, should be applied on account of the purchase price, and that so applied no default existed on the 8th of October, and that, because of the plaintiff's want of knowledge of the interests of the enterprises of the Public Utilities concern, he is unable to conclude whether it is to the benefit of the trust to carry out the terms of the said contract; that he names 37 public utility properties, all separate units, acquired by the Public Utilities Consolidated Corporation, and 12 subsidiaries, situated in 24 states of the United States, in the territory of Alaska and in Mexico, Honduras, and Nicaragua. And at bar it is stated that all are purchased under similar conditions.

The defendants on this hearing contend that the Kitsap County Transportation Company is a public service corporation operating ferries and passenger boats out of Seattle to a large number of communities, and that maintenance of adequate service is essential to the "many thousands of passengers who depend upon such service for their transportation"; that the vessels used by said company and its subsidiaries are not adequate to the service; that the passengers carried per annum approximate 1,000,000 persons, and automobiles in excess of 125,000; that the business is increasing, the heaviest burden being between May and September, inclusive; that for proper service additional ferry boats must be constructed for operation not later than May 1, 1930, and that work of construction must commence not later than December 15; that prior to said date financing arrangements must be made; that an emergency exists; that great and irreparable damage will be done to said properties and stockholders if adequate service is not maintained, or if the freedom of the defendants be restrained in providing such need; that this condition was known to W. B. Foshay Company, and preparations had been made for such vessels, plans approved by W. B. Foshay Company, who were to finance the enterprise, bids were called for and opened on the 16th of October, 1929; that further action must necessarily be deferred pending determination of this issue.

It is alleged in the complaint that on October 28, 1929, Macbride, for himself and Anderson, "agreed in consideration of the payment to them of $1,000.00 per month for a period of six months from October 8, 1929, by said Public Utilities Consolidated Corporation, that the monthly payments thereafter falling due   *   *   *   would be suspended

for such period of 6 months beginning October 8, 1929, and plaintiff alleges on information and belief that said Public Utilities Consolidated Corporation, in reliance on said agreement so made by said defendants, did not pay any regular installment thereafter payable under said agreements." This is denied by affidavit on the part of Macbride, and at bar it is stated by plaintiff that this agreement could not be established. It is also shown by affidavit of defendant Macbride, and it is not denied, that the stipulation in the trust mortgage on the properties, which is to be paid by the buyer, has the following covenant:

"The company hereby covenants and agrees to and with the Trustee that so long as any of said bonds are outstanding and unpaid the company will not declare any dividends upon any of its stock except out of current profits, and will not in any event declare any dividends upon any stock prior to the first of October of any calendar year, nor thereafter during any such calendar year unless it has deposited with the Trustee sufficient money to pay the bonds and interest coupons maturing October 1st of such year, plus moneys sufficient to pay all bonds and interest coupons maturing during the next calendar year."

This provision was by correspondence called to the attention of H. H. Henley, executive vice president, on September 9, 1929.

The bonded indebtedness of the Kitsap County Transportation Company is $250,000, with interest at 6½ per cent., being a serial sinking fund issue, retirable over a period of 15 years from and after April 1, 1928, secured by trust deed.

At bar attorney for the plaintiff addressed the following inquiry to the attorneys for the defendant: "Is that stock still in the bank?" To which response was made: "It is locked up in the People's First Avenue Bank where I placed it after it had been delivered to me by the escrow. The Court: If it has been delivered by the escrow, what has the court to do with it? Attorney for the plaintiff: Anderson and Macbride are made parties to this action, and they were parties to the trust and this agreement, and if it has been taken away wrongfully, then the court will impress the trust upon them."

Broadly stated, it is the contention of the plaintiff that the receiver is entitled to a reasonable time within which to consummate the transaction, and the prayer of the complaint is that the defendants be enjoined from changing the status quo of the escrow for the period of 6 months to enable the receiver to consummate the transaction or renounce it.

None of the shares of stock has been in the possession of the receiver. The order appointing the receiver in the court of primary jurisdiction or ancillary did not direct the receiver to take possession of this specific property.

In argument, plaintiff placed much stress upon the inherent right of the court, verging into the inherent right of the receiver, to enlarge the rights of the receiver beyond that of the principal, W. B. Foshay Company, and extend time of payment.

It is primer law, no doubt, that the receiver is not an assignee of the contract; he is a custodian of the court to hold all properties tangible, to protect all rights evidenced by contract or relation of conduct in part performance, and, whenever a right exists or is created by contract or cognizable by law, a violation of that right will be protected, unless there are considerations of policy or expediency which forbid a resort to this prohibitive remedy, § 1338, Pomeroy's Equity Jurisprudence.

It is also primer law that "equity will not interfere to restrain a breach of a contract * * * or violation of any right when the legal remedy of compensatory damages would be complete and adequate." Section 1338, supra.

It is said that this action is to protect an equitable estate and in aid of purely equitable remedy, citing section 1339, Pomeroy. The plaintiff is not seeking to enforce an equitable remedy or praying the court to impress a lien. And there is no allegation or proof that defendants are insolvent, or that compensatory damages would not be complete and adequate.

The record discloses that the property in issue is a separate unit, distinct from any properties of the public utilities corporation, and not intermingled with other property, and forms no link or associate relation to any other properties or line or system of the insolvent company for public or private service.

The cases relied upon by the plaintiff bear a different relation to the property involved. In Quincy, etc., v. Humphreys, 145 U. S. 82, 12 S. Ct. 787, 36 L. Ed. 632, the railroad was operated as a unit under a long term lease and option for perpetuity. The leased property had been absorbed into the complainant's system, rolling stock had been intermingled and incapable of distinction, and the contention that the system had to be treated as a

unit, all of which was in possession of the railway company, and the decree of foreclosure included all properties. The court at page 98 of 145 U. S., 12 S. Ct. 792, said:

"The ordinary chancery receiver—such as we have in this case—is clothed with no estate in the property, but is a mere custodian of it for the court; and, by special authority, may become an officer of the court to effect a sale of the property, if that be deemed necessary for the benefit of the parties concerned. If the order of the court, under which the receiver acts, embraces the leasehold estate, it becomes his duty, of course, to take possession of it. But he does not, by taking such possession, become assignee of the term, in any proper sense of the word. He holds that as he would hold any other personal property involved, for and as the hand of the court, and not as assignee of the term."

And the court held that the taking possession of the property under the order of the court does not obligate the receiver of the estate to take the property, but only to the reasonable rental value of the property while in possession of the receiver. And United States Trust Co. v. Wabash W. R. Co., 150 U. S. 287, 14 S. Ct. 86, 37 L. Ed. 1085, is the same case with another issue to be determined, and was disposed of in like manner.

To the same effect is Southern Express Co. v. Ry. Co., 99 U. S. 191, 25 L. Ed. 319, in which the court declined to enforce the specific contract against the receiver.

In Sunflower Oil Co. v. Wilson, 142 U. S. 313, 12 S. Ct. 235, 35 L. Ed. 1025, a proceeding to enforce specific performance against the receiver, the court at page 322 of 142 U. S., 12 S. Ct. 237, said:

"Upon taking possession of the property, he was entitled to a reasonable time to elect whether he would adopt this contract and make it his own, or whether he would insist upon the inability of the company to pay, and return the property in good order and condition; *paying, of course, the stipulated rental for it so long as he need it.*" (Italics supplied.) Citing authorities.

In Carswell v. Farmers' Loan & Trust Co. of New York (C. C. A.) 74 F. 88, the receiver in that case had taken possession. The court held that the receiver of the railroad company had not elected to adopt the lease of the depot or to retain possession against the will of the depot company, and was liable only for reasonable rental and not for the sum stipulated by the contract. He was, with the consent of the company, permitted to remain in possession, and the court declined to enforce specific performance.

In Johnson v. Lehigh Valley Traction Co. (C. C.) 130 F. 932, the lease provided that in part payment of the rental the lessee should pay semiannual dividends to the stockholders of the lessor company, which was required to declare such dividends in advance of each payment. This requirement had not been observed; the payments having been made to the lessor company which distributed the same. Default was made in one of such payments, and correspondence ensued in which the lessee endeavored to obtain further time, and certain stockholders stated their desire not to be insistent, and at this time receivers were appointed for the lessee. A resolution was then passed by the lessor's stockholders declaring a forfeiture of the lease, and notice was given the lessee and receivers as provided by the lease requiring payment to be made within 30 days, otherwise the lease to stand annulled. Eleven days after the expiration of such time, the payment was made by the receivers, and distributed among the lessor's stockholders, who retained the same. The receivers had also made other payments of interest which applied on the rental. The court held that it would not enforce a forfeiture and require its receivers to surrender the property, for the reason, among others, that no dividend had been declared and list furnished, which was a substantial condition precedent to forfeiture imposed by the lease that had not been waived by the lessee.

In Fleming et al. v. Fleming Hotel Co., 69 N. J. Eq. 715, 61 A. 157, the lease provided that, if rent was unpaid, the lessor might re-enter, and, after default in payment of rent, a receiver was appointed for the lessee. The court held that the lessor was not entitled to forfeiture of the lease until it appeared that the lessor was unable or unwilling to pay the overdue rent, the court saying that the receiver was bound to pay for the use and occupation of the building during the time he held the property, even if he should determine to abandon the lease.

In Butterworth v. Degnon Contracting Co. (C. C. A.) 214 F. 772, the receiver continued performance of a contract of the insolvent by making deliveries of stone between October 5 and December 30, and found it not profitable, and notified the other party that he would not carry out the contract, and the court declined to enforce specific performance of the contract against the receiver.

In Crawford v. Gordon, 88 Wash. 553, 153 P. 363, L. R. A. 1916C, 516, the court held

that receivers coming into the possession of property, purchased by illegally appointed receivers under a conditional sales contract which was voidable, are not entitled to retain the property and pay its reasonable value, but must repudiate the contract or pay the agreed price.

There is no question, as stated by Judge Lurton in Dayton Hydraulic Co. v. Felsenthall (C. C. A.) 116 F. 961, at 965: "The doctrine that a receiver may take possession of a leasehold, and use the premises for a reasonable time to enable him to elect whether he would adopt the contract and make it his own, or surrender the property to the lessor, so far as he is able to do so without affecting the term as between lessor and lessee, has become the settled rule in courts of the United States." And it was held that the rejection of the demand of the lessor for possession, except on a condition that he had no right to impose, was equivalent to an election to retain his constructive possession of the property, which bound the receivership to the payment of the rental from that time forward.

There is no precedent for a receiver to take possession of property under lease and hold the same without paying the rental. In every case, so far as advised, the court, through its receiver, must do equity, and may not retain a property or advantage without complying with the terms of the contract.

The receiver proceeds, not summarily by petition to show cause in this court why liens should not be impressed, but by plenary action to enjoin exercise of ownership of property not in his possession, by the defendant owners. The defendants First National Bank, Anderson, and Macbride were not parties to the action in which the receiver was appointed, and any orders in that proceeding are ineffectual as against the named defendants. Lucey Mfg. Corp. v. Morlan (C. C. A.) 14 F. (2d) 920.

The title or right of the receiver accrues upon his appointment, and upon his qualification relates to the date of appointment, and in this case, November 8, 1929, Horn v. Pere Marquette R. Co. (C. C.) 151 F. 626, and the power of the receiver is coextensive only with that of the territorial jurisdiction of such court, Primos Chem. Co. v. Fulton Steel Corp. (D. C.) 254 F. 454, and acquires all the rights, but no greater or superior right or interest than the debtor had, and subject to the same equities and liens, Black et al. v. Manhattan Trust Co. (D. C.) 213 F. 692; Wright v. Seaboard Steel &

Manganese Corp. (C. C. A.) 272 F. 807; Cowden v. Wild Goose Min. Co. (C. C. A.) 199 F. 561; Kennison v. Kanzler (C. C. A.) 4 F. (2d) 315. In Odell v. H. Batterman Co., 223 F. 292, at page 297, Judge Rogers, for the Court of Appeals (Second Circuit) said:

"The appointment of the receivers in no wise abrogated the contract. And if under the lease after breach the landlord is entitled upon giving proper notice to the immediate possession of the property as against the tenant he certainly must have the same right as against the receivers. Receivers are not appointed to keep persons out of their rights. The law does not tolerate so rank an injustice. In Eyton v. Denbigh, etc., R. Co., L. R. 6 Eq. 14, 16 (1868), the plaintiff had conveyed land to a railway company in consideration of a rent charge. The company passed into the hands of a receiver, and Lord Romilly, Master of the Rolls, in permitting the owner of the rent charge to distrain for arrears of rent, said:

" 'I am clearly of opinion that I must give the applicant leave to distrain. * * * *The receiver was not appointed for the purpose of keeping persons out of their rights,* and in making this order I express no opinion as to the legal rights of the applicant, but simply remove out of his way the difficulty of the officer of the court being in possession. It is exactly the same case as if a stranger to the suit was applying for leave to bring ejectment.'

"And in Park v. New York, L. E. & W. R. Co. (C. C.) 57 F. 799, 802 (1893), Judge Lacombe said:

" ' * * * If the receivers continue to hold a particular piece of property which they found in the possession of the Erie road, and which that road could only continue to hold upon complying with certain conditions, they must, if they so hold it, in like manner conform to these conditions.' "

By the same token it would seem to follow that, the property being a distinct entity, a separate unit, not used in conjunction with any other property of the Utilities Corporation, nor intermingled in any sense or forming any link with or with relation to any other property or system, no offer to conform with the terms of the contract being made, the right of the defendants ought not to be enjoined in this plenary proceeding. This action is in the nature of a proceeding to have the court write a new contract and extend the terms and enlarge conditions beyond the time stipulated by the parties. The court may not make a contract for the parties nor abrogate

any of the conditions of the agreement solemnly entered into. Since declaration of forfeiture another payment has matured, and within 3 days another will be due. The receiver was appointed by the court in the district of Minnesota 34 days ago, and by this court 27 days ago, and there is no offer or tender of due payments.

Again, it appears impliedly by the contract and positively by the conduct and correspondence of the parties that the defendants Macbride and Anderson are not the real parties in interest with relation to some of the stock; that they have caused to be deposited some of the stock owned by other stockholders. It is also made to appear at bar that this stock was redelivered by the escrow holder the day following the date of forfeiture and prior to the appointment of this receiver.

Conceding for the purpose that the court would have power, under certain conditions, to impress a trust upon the stock owned by Anderson and Macbride, it does not follow that the court could do so as to stock owned by other persons, who are the real parties in interest. The stock interest in the contract may not be segregated. The regularity of forfeiture is not challenged, and, being complete if redelivery by the escrow will effect it, being divorced from the contract of sale, the interest therein is vested in the owners, and, none being parties to this action except Anderson and Macbride, the court could not enter any order affecting the interest of persons not parties to this action.

The Supreme Court in Shields v. Barrow, 58 U. S. (17 How.) 130, 15 L. Ed. 158, held that the court may not make a decree which affects the rights of persons not parties to the action. And in Minnesota v. Northern Securities Co., 184 U. S. 199, 22 S. Ct. 308, 46 L. Ed. 499, it held that the persons materially interested either legally or beneficially in the subject-matter of a suit are to be made parties to it, and that the prayer of a bill would not be allowed against persons who would be injuriously affected, who are not made parties, and a decree may not be enforced against a man's rights, not a party, even though not raised by the pleadings. And Judge Sanborn for the Court of Appeals of the Eighth Circuit in Donovan v. Campion et al., 85 F. 71, held that all parties necessary to a determination of the controversy are necessary parties.

I express no opinion as to the regularity of the forfeiture, but simply hold that the receiver has no greater rights than the company he represents, and, to assert any claim or right under the contract, he must conform to its conditions, and, if he becomes convinced the contract is not advantageous to the estate, he may within a reasonable time abandon it.

The motion for a temporary restraining order is denied.