AMERICAN BRAKE SHOE & FOUNDRY CO. v. NEW YORK RYS. CO. In re EIGHTH AVE. R. CO. In re NINTH AVE. R. CO.*

(District Court, S. D. New York. June 7, 1920.)

1. Receivers ⬦90—Entitled to time to determine whether to adopt existing contracts.

The rule that a receiver is entitled to a reasonable time to determine whether or not to adopt an existing contract is peculiarly applicable, where he is operating an extensive transportation system in a densely crowded community, and his action and that of the court will affect public necessity, comfort, and convenience, as well as private rights and interests.

2. Receivers ⬦90—"Reasonable time" for adoption or repudiation of contract dependent on conditions.

What is a reasonable time within which a receiver is required to adopt or repudiate an existing contract must always be determined by all the facts and circumstances surrounding the particular case.

3. Street railroads ⬦58—Receiver held to have surrendered leases within reasonable time after appointment.

The surrender by the receiver for an extensive street railroad system, pursuant to orders of the court, of leased lines to the lessors, one within four months and the other within six months after his permanent appointment, held within the reasonable time to which he was entitled to affirm or disaffirm the leases.

4. Street railroads ⬦58—Temporary operation of leased car lines by receiver held for account of lessors.

Where the receiver for a street railroad system continued operation of leased lines until disaffirmance of the leases, such operation held for account of the lessors, who were not entitled to demand rental under the lease for such time.

5. Street railroads ⬦58—Demand on receiver for return of leased property held ineffective.

A demand by lessors of street railway lines for their return, made on the receiver of the lessee at a time when the lessors were not in condition for immediate operation of the lines, and when, if granted, operation would necessarily have been interrupted, held not effective as a basis for claims for rental thereafter, where the lines were returned as soon as arrangements were perfected for their continued operation.

In Equity. Suit by the American Brake Shoe & Foundry Company against the New York Railways Company. In the Matter of Claims of the Eighth Avenue and the Ninth Avenue Railroad Companies, respectively, for rent. Petitions denied, and claims deferred until final accounting.

See, also, 278 Fed. 842.

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Decree affirmed 282 Fed. 523.

Michel Kirtland, of New York City (Morgan J. O'Brien, of New York City, of counsel), for the motion.

Winthrop & Stimson, of New York City (Bronson Winthrop, Allen T. Klots, and George Herbert Semler, all of New York City, of counsel), opposed.

MAYER, District Judge. The receiver of defendant, for periods mentioned infra, operated the lines of the Eighth Avenue Railroad Company and the Ninth Avenue Railroad Company, lessors, and now each company claims the full stipulated rental during the time of such operation. The claim of the Eighth Avenue Railroad Company is $127,485.30, and that of the Ninth Avenue Railroad Company $47,-974.20. The figures making up these claims consist of rental at the amount stipulated in the leases and taxes. The time covered by these claims is apparently from March 20, 1919, the date of the appointment of the temporary receiver, to August 1, 1919, in the case of the Eighth Avenue Railroad Company, and to October 1, 1919, in the case of the Ninth Avenue Railroad Company. The proceedings in respect of the subject-matter and the various hearings and discussions had with reference thereto are fully set forth in the printed record of the proceedings of the receivership. It will not be necessary to spread out these details in this opinion. It will suffice to state the facts in outline and the conclusions of the court in respect both of the facts and the law.

There are assertions and claims of rights by the mortgage trustees, which are not made by the receiver, but which, if not adjudicated, might still leave open and undetermined certain questions contended by mortgage trustees to be important, were the court to hold that the receiver is liable for any sum, before it is ascertained out of what fund such sum should equitably be paid. In my opinion, it would establish a precedent of much embarrassment, if claims of the character here made were to be disposed of prior to the final accounting. Upon the final accounting it must be assumed that all parties and claimants interested in the fund will be before the court, and that any decree or decrees made as a result of the final accounting will involve complete adjudication and will be stamped with finality. The applications of the two petitioners herein could be disposed of at this point by postponing the consideration of their claims until such final accounting; but as, in the administration of an estate of this character, the novelty of yesterday so soon becomes the commonplace of to-day, it is probably desirable to record the contemporaneous view of the court which dealt with the situation at first hand.

When the temporary receiver herein was appointed on March 20, 1919, there came into his hands an extensive surface railway system covering a considerable territory. Some of this system was owned by defendant corporation through stock ownership, some partly owned through stock ownership, and some not owned at all, but operated under leases. Many franchises had been granted at different times, with different provisions, under varying statutes, and with the consent of varying official bodies. The theory upon which the system

seems to have been devised was to collect together a considerable number of surface railroads capable of operation as a unified system, with extensive transfer rights or privileges to the traveling public. When, therefore, the receiver was appointed, it was naturally his hope and effort, as disclosed by the record, to hold this extensive system together, if such course were practicable, and the problem which faced him, as well as the court, was of so difficult a character as to require at the hands of the receiver a careful study and an intelligent understanding of the complicated facts, as well as an appreciation of the legal complexities which the situation presented.

For a considerable period of time the traveling public had received free transfers to or from the Eighth and Ninth Avenue lines, and to or from other parts of defendant's operated system, for a ride susceptible of being extended to a considerable mileage. The severance of either the Eighth or Ninth Avenue Railroad would necessarily result in the payment of additional fares by that part of the traveling public accustomed to use these lines. There were many difficult legal as well as practical problems because, inter alia, of the provisions of the franchises and of trackage arrangements or agreements. The serious responsibility of determining the proper course to pursue deserved and required careful and mature consideration at the hands of the receiver and the court. A mere form of demand for the return of these lines by the lessors, made almost at the very beginning of the receivership, could not fairly in a court of equity lay the basis for a real "knocking at the door."

On March 31, 1919, the appointment of the temporary receiver was made permanent, and three days thereafter, viz. on April 3, 1919, a so-called demand of possession was made by the Eighth Avenue line. At this time it is clear beyond question that the Eighth Avenue Railroad Company would have been totally unable to operate the line without the help of the receiver, and the very phraseology of the demand, in so far as it relates to date of delivery, is equivalent to a recognition of this fact; for the demand stated:

"The Eighth Avenue Railroad Company will arrange with you to take possession at such time and in such manner as will least interfere with the public service."

The foregoing extract also recognizes what the court was bound to recognize and did recognize; i. e., the importance of effectuating any change without cessation of operation and with as little interference with the public service as practicable. The question was not an easy one to decide. To return the line to its owners would disrupt conveniences and privileges to which the public has long been accustomed. To continue to operate it might cause substantial loss to defendant and the bondholding interests, as well as to the lessor. It was the receiver, however, who had all the facilities at his command to make possible the actual independent operation by the lessor. Not the least of these requisites was the necessary force of trained employés. This feature was fully realized when counsel for the lessor said, inter alia, on June 25, 1919:

"I mean that the receiver should turn over to us all the conductors and brakemen and motormen now on the line; just turn over the road to us as he got it himself."

The court at the same hearing had stated that, if counsel for the lessor "present to me by the 1st day of July a plan of operation which is satisfactory to me, I will instruct the receiver to return the lines of the Eighth and Ninth Avenue roads to the owners of the property. That order may be settled on the 1st of July on notice to all concerned," and also, "I mean to say that that railroad must not by technique or accident stop for one second for the accommodation of the public." At the suggestion of counsel for the lessor, the matter was set down for July 8th instead of July 1st. The proposed plan stated:

"Negotiations have been had with the receiver subject to the approval of the court, and arrangements made whereby he will furnish for a time stated the necessary supply of electric power, emergency service, repair work, extra rolling stock, additional car house facilities, platform men, etc., with which to operate the road." (Record p. 1626.)

For good reasons, the hearing was put over until July 11th. Finally, after considerable conference and negotiation involving much detail and far from simple arrangements, an agreement was entered into, the outstanding feature of which, so far as affects this controversy, is the aid extended by the receiver to enable the lessor line to continue the public service without interruption. On July 15th, the order was made directing the return of the leased property on August 1st, a date understood by the court at that time to be convenient for many desirable reasons.

The foregoing is merely an outline of the proceedings, some of which are set forth in the record, and the remainder of which consist of conferences as to details. In respect of the Ninth Avenue Railroad Company, the proceedings were substantially the same until July 8th, but the Ninth Avenue line was even in a worse position than the Eighth Avenue line, because the former had no facilities whatever for storing and repairing its cars.

The discussion at the hearing of July 8th developed some complications peculiar to the Ninth Avenue line which required careful consideration. The court had already postponed his vacation, and so long as there was to be an adjournment there seemed to be no objection to the particular date next set. After further adjournments, fully accounted for, the court on September 11, 1919, orally directed the return of the Ninth Avenue line to its owners; but the date was not fixed, because operating details had not been arranged. At a hearing on September 24th, various matters of arrangement were still open; but the court, nevertheless, ordered the road to be turned over on October 1, 1919, and an order to that effect was made September 26, 1919. The agreement between the receiver and the Ninth Avenue line was dated September 27, 1919, and the order of September 26th was filed September 27, 1919.

The agreement shows that the receiver under certain terms was to afford the Ninth Avenue line (1) storage space and certain access, (2)

electric power, and was (3) to do maintenance work for the cars, and (4) to deliver tools and implements necessary for the operation of the cars. It is immaterial whether the receiver made or bought and sold power, or what, under the terms of the lease, will be found to be the obligation, if any, of the receiver to turn over cars. The point is that, in both the Eighth and Ninth Avenue situations, the lessor lines had nothing but tracks and at most (for the sake of argument) cars, and they relied on the receiver to supply all or most of the other necessary equipment and tools and all or most of the employés (outside of the superintendent) necessary for the operation of the roads.

Further, the severance of the Ninth Avenue line brought about a change far more vital than the Eighth Avenue severance, because it ended the through uptown operation of the Broadway and Seventh Avenue line, and broke up the system into a series of separate operative units, involving a really great change in operation, which affected the public as well as the railroad companies themselves.

During this period, the court was also dealing with grave problems which it was called upon to view from a comprehensive standpoint. In the early days of the receivership, the Public Service Commission had made orders allowing a two-cent charge at certain transfer points. These orders, it was hoped, would add an amount to the income of the receivership sufficient to justify the receiver in continuing the defendant's operated lines as a unified system; but in August, 1919, it became necessary to accord to the employés a substantial increase in wages, which rendered futile the hope of continuing the unified system.

[1] The foregoing are only some of the problems with which the court was called upon to deal, in determining the best course to pursue in respect of the applications of these petitioners. It is the settled law that a receiver is entitled to a reasonable time, or "breathing space," within which to investigate whether or not a contract is profitable and whether or not it is to the advantage of the estate to adopt it. High on Receivers (4th Ed.). This principle peculiarly applies to a case where a receiver is operating an extensive transportation system, vital as this is to the welfare of a densely crowded community; for his action and that of the court obviously affect public necessity, comfort, and convenience, as well as private rights and interests. Quincy, Missouri & Pacific R. Co. v. Humphreys, 145 U. S. 82, 13 Sup. Ct. 787, 36 L. Ed. 632; U. S. Trust Co. v. Wabash Western Ry. Co., 150 U. S. 287, 14 Sup. Ct. 86, 37 L. Ed. 1085; Pennsylvania Steel Co. v. New York City Ry. Co., 225 Fed. 734, 141 C. C. A. 6; Carswell v. Farmers' Loan & Trust Co., 74 Fed. 88, 20 C. C. A. 282; Ames v. Union Pacific Ry. Co. (C. C.) 60 Fed. 966.

[2] What is a reasonable time must always be determined by all the facts and circumstances surrounding the particular case in hand. The fact that in one case (such as U. S. Trust Co. v. Wabash, 150 U. S. 287, 14 Sup. Ct. 86, 37 L. Ed. 1085) 30 days may be regarded as reasonable does not mean that in another case the same period must be so regarded. On analysis, the Wabash Case, supra, is distinguishable from the case at bar in certain respects, but it is not necessary

to spend any time in such analysis. Courts and juries are constantly dealing with "reasonable time," which is always an elastic term, responding to the requirements of the particular situation under consideration.

[3] It seems to me, on the facts in this case, that August 1st for the Eighth Avenue and October 1st for the Ninth Avenue were each well within a reasonable time. It must not be forgotten, as the record shows, that the court expressed its views at each and every hearing. It did not take any questions under advisement, delaying its decision for weeks, as it might justifiably have done; but, anxious that a disposition might be made, not only justly, but promptly, the court feels that its method expedited the making of the orders which resulted in turning back these roads to the lessors at the dates in question.

The petitioners were concerned only with their private rights. The court and the receiver were charged with the duty of considering the whole complex situation, and to say that so important a matter should have been decided a few days after the receiver was permanently appointed is to say that "reasonable time" and "breathing space" mean nothing. If, then, the demands be regarded as made in good faith, I hold that the period during which the receiver operated the road was a reasonable time, within which he had the right to determine what course to pursue, and that the orders of the court were seasonably made.

[4] So holding, it follows that the rule applies which is now so familiar in this circuit, since Pennsylvania Steel Co. v. N. Y. Rys. Co., 198 Fed. 721, 117 C. C. A. 503; i. e., that during the period of the receiver's operation he is deemed to have operated these roads for the account of the lessors. It is sufficient to quote the following extract:

"A lessor railroad company is seldom so situated that it can take back its property immediately upon the appointment of a receiver for its lessee. It may have no working organization. Its rolling stock may have become worn out. It may have insufficient immediate funds. Its public duties, however, must be performed without interruption. It is a quasi public corporation and must keep its railroad going. Its franchises must be preserved. Its obligations as a common carrier must be fulfilled. And these obligations can seldom be fulfilled, except by the temporary operation of the leased road by the receiver of the lessee. A court of equity in provisionally operating a leased line confers a benefit upon the lessor company as well as upon the lessee. * * *"

[5] But, in addition to the foregoing, it is plain that the demands from time to time were not made in good faith. This statement is not intended to be invidious, but rather as indicating that skilled counsel were endeavoring to protect their clients' interests by laying the foundation for these claims. If, when there was an attempt to "knock at the door" on April 3, 1919, the receiver had opened the door, no one would have been more surprised nor scared than the lessors. For from that very moment the lessors would have been confronted with the necessity of finding men, cars, tools, equipment, power, storage space, and the like—no easy task. The best proof of it all is that the

lessor lines made their arrangements with the receiver and any one at all familiar with the situation and with the very real problems of such railway operation knows that, unless the receiver by direction of the court had made arrangements to furnish to the lessor lines needed facilities (quite outside of what the lessor lines claim they were entitled to), those lines would have had considerable difficulty and certainly would have occupied much time in getting into operative shape.

The court is of opinion that the course pursued, not only conserved the public interest, but was fair and, indeed, beneficial to the leased lines. It enabled the leased lines to be taken over without confusion and without one minute's interruption in service—a not altogether usual result in so difficult a practical situation. When it is the duty of a receiver to attain such a result, if possible, both in the public and private interests concerned, it is futile to characterize as an effective binding demand a practically contingent "demand" to turn back to lessors leased lines which they are unable to operate at the time the demands is made or repeated.

Other questions are discussed in the briefs, but reference thereto at present is unnecessary. The petitions are denied, and the claims of petitioners set forth in their petitions are, in all respects, deferred until the final accounting.

The very helpful "Chronology" of counsel for the receiver, attached to the reply brief, is made part of this opinion for purposes of convenient reference hereafter.

Settle order on three days' notice.

### The Eighth Avenue Railroad Company Chronology.

1919

March 20. Job E. Hedges appointed temporary receiver.

March 31. Job E. Hedges appointed permanent receiver.

April 3. Demand served on Hedges (page 236).

April 11. Order to show cause, returnable April 21, issued on petition of the Eighth Avenue (page 191), filed April 22. 1919.

April 21. Answer of Job E. Hedges submitted (page 238).

April 21. Petition of the Eighth Avenue heard (page 334). Court orally denies application, with leave to renew on 10 days' notice (page 361).

April 30. Order signed, denying petition, with leave to renew, etc. (page 362).

May 2. Order entered denying petition, with leave to renew, etc.

June 16. Second Petition of Eighth Avenue (page 870).

June 17. Second petition served, returnable June 26, 1919 (page 879).

June 24. Answer of Job E. Hedges (page 975).

June 25. Hearing (page 1125). See as to ability to operate page 1136. Court demands plan (page 1134). Plan discussed. Hearing adjourned to July 8. Application granted orally (page 1143).

July 1. Receiver appointed in adjustment mortgage foreclosure (page 1058).

July 7. Plan of operation served on receiver (page 1625).

July 8. Adjourned hearing; Eighth Avenue cannot operate alone (page 1163).

July 11. Adjourned hearing; Eighth Avenue cannot operate alone (page 1193).

July 14. Receiver under refunding mortgage appointed (page 1265).

July 15. Agreement between receiver and the Eighth Avenue executed.

Aug. 1. Leased property returned.

### The Ninth Avenue Railroad Company Chronology.

1919.

| | | |
|---|---|---|
| March 20. | Job E. Hedges appointed temporary receiver. | |
| March 31. | Job E. Hedges appointed permanent receiver. | |
| April 3. | Demand served on Hedges (page 300). | |
| April 11. | Order to show cause, returnable April 21, issued on petition of Ninth Avenue (page 260), filed April 22, 1919. | |
| April 21. | Answer of Job E. Hedges submitted (page 302). | |
| April 21. | Petition of Ninth Avenue heard (page 334). Court orally denies application, with leave to renew on 10 days' notice (page 361). | |
| April 30. | Order signed, denying petition, with leave to renew, etc. (page 363). | |
| May 2. | Order entered, denying petition, with leave to renew, etc. | |
| June 16. | Second petition of Ninth Avenue (page 880). | |
| June 17. | Second petition served, returnable June 26, 1919 (page 889). | |
| June 24. | Answer of Job E. Hedges (page 978). | |
| June 25. | Hearing (page 1123). See, as to ability to operate, page 1135. Court demands plan (page 1134). Plan discussed. Oral direction to return lines given (page 1143). Hearing adjourned to July 8. | |
| July 1. | Receiver appointed in adjustment mortgage foreclosure (page 1058). | |
| July 7. | Plan of operation served on receiver (page 1628). | |
| July 8. | Adjourned hearing (page 1163). Difficulties of releasing Ninth Avenue (page 1164). See, as to franchise routes (page 1174). Discussion as to plans of operation (page 1174). Adjourned to August 28 (page 1188). | |
| July 14. | Receiver under refunding mortgage appointed (page 1265). | |
| Aug. 28. | Adjourned hearing (page 1732). Hearing adjourned to September 9. | |
| Sept. 11. | Adjourned hearing (page 1937). | |
| Sept. 11. | Application to return Ninth Avenue lines granted. Order to be settled on notice (page 1946). | |
| Sept. 24. | Further hearings on plan of operation (page 1996). As to giving cars (page 2000). | |
| Sept. 26. | Order for return signed (page 2083). | |
| Sept. 27. | Order for return entered. | |
| Sept. 29. | Agreement between receiver and the Ninth Avenue executed (page 2103). | |
| Sept. 30. | Order approving agreement filed (page 2097). | |
| Oct. 1. | Leased property returned. | |